**Parker W. PACKARD; John B. Upp, Individually and on behalf of all others similarly situated,**

**John B. Upp, Appellee,**

v.

**PROVIDENT NATIONAL BANK; Mellon Bank (EAST), N.A., Individually and on behalf of all others similarly situated,**

**Mellon Bank, N.A., Appellant,**

**Pennsylvania Bankers Association; Probate and Trust Law Section of the Allegheny County Bar Association; American Bankers Association; Association of Bank Holding Companies; and Independent Bankers Association of America, Amicus–Appellant.**

**No. 92–1753.**

United States Court of Appeals, Third Circuit.

Argued March 29, 1993.

Decided May 18, 1993.

Sur Petition for Rehearing June 18, 1993.

**1042**

W. Thomas McGough, Jr. (Argued), Walter T. McGough, Gregory B. Jordan, Perry A. Napolitano, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for appellant Mellon Bank, N.A.

C. Oliver Burt, III (Argued), Brenda M. Nelson, Robin Resnick, Mark C. Rifkin, Miles B. Rittmaster, Greenfield & Chimicles, Haverford, PA, for appellee John B. Upp.

Louise A. Rynd, Pennsylvania Bankers Ass'n, Harrisburg, PA, for amicus-appellant Pennsylvania Bankers Ass'n.

John F. Meck, Houston, Houston & Donnelly, Pittsburgh, PA, for amicus-appellant Allegheny County Bar Ass'n.

John J. Gill, Michael F. Crotty, American Bankers Ass'n Washington, DC, for amicus-appellant American Bankers Ass'n.

Richard M. Whiting, Association of Bank Holding Companies, Washington, DC, for amicus-appellant Association of Bank Holding Companies.

Leonard J. Rubin, Bracewell & Patterson, Washington, DC, for amicus-appellant Independent Bankers Assoc. of America.

Before: SLOVITER, Chief Judge, COWEN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Mellon Bank appeals from a final judgment of the district court holding certain of its trust fees unreasonable, ordering restitution of those fees to a class of trust beneficiaries and awarding punitive damages to the class representative. Because it is evident to a legal certainty that the requisite amount in controversy for diversity jurisdiction was never recoverable, the district court lacked subject matter jurisdiction. We will therefore vacate its judgment and remand the case for dismissal.

### I.

#### A.

Mellon Bank serves as the trustee of thousands of trusts of varying types. One of its duties as a trustee is to insure that trust assets are invested productively at all times. One of the more problematic aspects of this duty has been the question of how to invest temporarily idle trust account cash. For many years, banks would simply transfer this money to non-interest bearing accounts, in part because of the administrative cost and complexity of investing these usually small sums and in part because suitable short-term investment vehicles were not available. Although there was nothing illegal or improper about this practice, it gave banks a windfall from the "float" and deprived beneficiaries of full return on their funds.

In the early 1980's, computer technology made it cost-effective to invest small sums of idle cash for short periods of time. In addition, various money market funds, which were suitable short-term investments, became available. In 1981, Girard Bank (now merged into Mellon Bank, N.A.) began offer-

ing a service known as "sweeping." A sweep service looks daily for idle cash and invests it in an interest-bearing vehicle until the cash is either invested long-term or distributed to the beneficiary. Shortly thereafter, Mellon itself began to develop a sweeping system. In late 1982, the Comptroller of the Currency promulgated regulations under which national banks were required to sweep trust funds.

At that time, Pennsylvania law was silent on whether banks could charge the trust for the sweeping service. Nevertheless, both Mellon and Girard began charging "sweep fees" of 30 and 37½ basis points, respectively.[1] Both banks sent notices informing their customers of the sweep fee. In 1984, Pennsylvania enacted a statute authorizing reasonable sweep fees in addition to whatever other compensation the trustee was entitled to receive. *See* 20 Pa.Cons.Stat.Ann. § 7315.1 (Purdon Supp.1992).

### B.

John B. Upp is the beneficiary of three trusts administered by Mellon Bank, all subject to sweep fees. Between 1981 and 1991, Mellon Bank charged Upp $4,012.14 in sweep fees. Upp and Parker W. Packard, a beneficiary of trusts managed by Provident National Bank, filed this diversity suit in district court. Upp and Packard alleged, on behalf of themselves and a class of similarly situated plaintiffs estimated to number at least 5,000, that Mellon, Provident and a class of defendant banks breached their fiduciary duties by, *inter alia,* charging unreasonably high sweep fees and by not adequately dis-

closing those fees.[2] Plaintiffs sought compensatory and punitive damages, and to enjoin the defendants from collecting excessive sweep fees in the future.

Defendants first moved to dismiss for lack of subject matter jurisdiction on the ground that the $50,000 jurisdictional amount was not satisfied. Fed.R.Civ.P. 12(b)(1). The motion also requested the district court, in the alternative, to abstain in light of the special expertise and jurisdiction of the Orphans' Court in dealing with trusts. *See Reichman v. Pittsburgh Nat'l Bank,* 465 F.2d 16 (3d Cir.1972). Plaintiffs filed an opposing memorandum. The next day, the district court denied the motion without argument or explanation. Defendants then answered the complaint.

In April 1992, Mellon filed accountings in the Orphans' Court of Montgomery County in two of Upp's trusts. These accountings specifically raised the propriety of the sweep fees. Upp removed the accountings to federal district court, where they were assigned to the same district judge presiding over the class action. Upon motion from Mellon, the district court remanded the accountings back to the Orphans' Court, citing *Reichman* and stating that "[r]emand is appropriate in view of the range of issues regarding defendant's exercise of its fiduciary duties which could be raised in these accounting [sic], and the Orphan [sic] Court's particular expertise in the field of supervising the administration of trusts and estates."[3] A month later, the Orphans' Court issued a decree *nisi* approving Mellon's accounting as to Upp, including

1. Under a 37½ basis point fee, if $100 were invested for an entire year, the fee would amount to 37½ cents. The beneficiary would pay that amount in return for having his or her funds invested and receiving interest computed at market rates. Under the former practice, no sweep fee would be charged but the beneficiary would earn no interest whatsoever. In 1985, Mellon increased its sweep fee to 50 basis points.

2. The district court initially refused to certify the plaintiff class, but upon a renewed motion by plaintiffs, granted certification. No defendant class was ever certified, however. The district court later approved a settlement between Provident National Bank and its trust beneficiaries. That settlement did not involve money damages

of any kind. After this partial settlement, the case proceeded between Mellon Bank and its trust beneficiaries.

3. Evidently, the district court viewed the issue of the sweep fees as considerably narrower than the complete accounting it would have to rule on if remand were not granted. Provident had also filed accountings in the Orphans' Court. After plaintiffs removed, the district court remanded here as well. The court relied on the same reasoning and caselaw, but expressly declined to address whether *Reichman* permitted or required abstention in the class action. Although we are uncertain what significance the "narrowness" of the issue should have on the decision to remand as against the decision not to abstain, in light of our disposition, we need not reach this issue.

the propriety of the sweep fees. *Bigelow Trust,* 12 Fiduc.Rep.2d 256 (O.C.Mont.Co. 1992).[4]

On June 5, 1992, Mellon renewed its motion to dismiss for lack of subject matter jurisdiction or in the alternative to abstain. On June 23, three days *before* plaintiffs filed their memorandum in opposition, the district court once again denied the motion without argument or explanation. On July 24, Mellon moved to stay the proceedings.[5] On July 27, plaintiffs answered. The next day, the district court denied the motion. This time, the district court provided a two page order which stated that because punitive damages were potentially recoverable against a trustee, the jurisdictional amount was satisfied.

On August 3–6, the district court conducted a trial on the merits.[6] On August 7, it issued a fifteen page opinion detailing its findings of fact and conclusions of law. *Upp v. Mellon Bank, N.A.,* 799 F.Supp. 540 (E.D.Pa.1992). The court held that Mellon did not inform its customers of the sweep fees "in meaningful terms," and that the sweep fees were excessive and far out of proportion to a reasonable charge for the sweeping service. *Id.* at 542. Additionally, the district court stated that Mellon had "feathered its own nest" at the expense of trust funds, *id.,* that it "double dipped" by charging a sweep fee in addition to the normal trust management fee, *id.,* and that before the practice of sweeping began, Mellon treated idle trust fund cash as a "Christmas Club" for its own benefit. *Id.* at 544.

Based on these findings, the court held that Mellon's conduct was outrageous and showed a bad motive. *Id.* at 545. It then imposed punitive damages of $75,000 in favor of class representative Upp and ordered restitution of all the sweep fees Mellon had ever charged. *Id.* at 546. Notwithstanding this ruling in federal court, the Orphans' Court *en banc* later affirmed the previous decree *nisi* approving both Mellon's accounting and the propriety of the sweep fees.[7]

Mellon timely appealed from the district court's judgment. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Mellon's appeal asserts six grounds for reversal: 1. The district court lacked subject matter jurisdiction inasmuch as the amount in controversy requirement was not satisfied; 2. The Orphans' Court adjudication of the accountings collaterally estopped plaintiffs from litigating the sweep fee issue in the district court; 3. The district court abused its discretion in refusing to abstain; 4. The district court erred in certifying the plaintiff class; 5. The district court decided the merits in a manner contrary to Pennsylvania law; 6. The district court erred in its award of compensatory damages. We reach only the first of these contentions.[8]

### A.

The question of subject matter jurisdiction is a legal issue over which we exercise plenary review. *York Bank & Trust Co. v. Federal Sav. & Loan Ins. Corp.,* 851 F.2d 637, 638 (3d Cir.1988).

Diversity jurisdiction requires an amount in controversy in excess of $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). This provision must be narrowly construed so as not to frustrate the congres-

---

4. The Orphans' Court relied on its prior ruling in *Packard Trust,* 12 Fiduc.Rep.2d 148 (O.C.Mont. Co.1992), which held that the sweep fees were proper as to class representative Packard.

5. That same day, Mellon petitioned this court for writs of prohibition or mandamus enjoining the district court to either abstain or dismiss the case for lack of subject matter jurisdiction. A motions panel of this court denied the petition on July 29.

6. Although both parties had filed consents to trial before a United States Magistrate Judge, the district judge chose to conduct the trial himself.

7. We are informed that this decision is currently on appeal before the Superior Court of Pennsylvania.

8. We note, however, that the district court had the power to abstain in deference to the Orphans' Court. *See Ryan v. First Pa. Banking & Trust Co.,* 519 F.2d 572, 575 (3d Cir.1975); *Reichman,* 465 F.2d at 18; *In re Auerbacher,* 616 F.Supp. 532, 534 (E.D.Pa.1985).

sional purpose behind it: to keep the diversity caseload of the federal courts under some modicum of control. *See Nelson v. Keefer*, 451 F.2d 289, 293–94 (3d Cir.1971) (quoting *Snyder v. Harris*, 394 U.S. 332, 339–40, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969); *Healy v. Ratta*, 292 U.S. 263, 269–70, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)). The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

■ It is well-settled that in a diversity-based class action, members of the class may not aggregate their claims in order to reach the requisite amount in controversy. *Snyder*, 394 U.S. 332, 89 S.Ct. 1053 *passim*. The Supreme Court has also held that *each* member of the class must claim at least the jurisdictional amount. *Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973).[9]

■ In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), the Supreme Court laid down the standard for determining whether the requisite amount in controversy has been properly alleged:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal

---

9. Upp suggests that *Zahn* is no longer good law after the enactment of the Judicial Improvements Act of 1990, 28 U.S.C. § 1367. Upp makes no argument in support of this assertion, but cites two commentators in support of his view. *See* 1 James W. Moore et al., *Moore's Federal Practice* ¶ 0.97[5], at 927 (1992); Herbert B. Newberg, *Class Actions* § 6.11, at 6–45 through 6–49.

Section 1367(a) extends supplemental jurisdiction to the limits of Article III of the Constitution, subject only to the restrictions of section 1367(b). Section 1367(b) precludes the exercise of supplemental jurisdiction in diversity cases when joinder is accomplished pursuant to Fed.R.Civ.P. 14, 19, 20 or 24, but does not say anything about Rule 23 (class actions). From this, the argument is made that 28 U.S.C. § 1367(a) provides supplemental jurisdiction over diversity class members who do not individually meet the amount in controversy requirement, thus legislatively overruling *Zahn*.

The authors of *Moore's* have retreated from their position based on the statute's legislative history, which states that section 1367 was not intended to affect jurisdictional requirements in diversity-based class actions and cites *Zahn*. 1 *Moore* et al., *supra*, ¶ 0.97[5], at 927 (1993); *see also* H.R.Rep. No. 734, P.L. 101–650, 101st Cong., 2d Sess., *reprinted in* 1990 U.S.C.C.A.N. 6802, 6860, 6875. Newberg, on the other hand, discounts this history, stating that because the statute is unambiguous on its face, legislative history may not be resorted to according to the Supreme Court's decision in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).

This question has spawned a considerable academic debate as well. *See* Thomas M. Mengler, Stephen B. Burbank & Thomas D. Rowe, Jr., *Congress Accepts Supreme Court's Invitation to Codify Supplemental Jurisdiction*, 74 Judicature 213, 215 (1991) (academics who assisted in drafting section 1367 assert that legislative history indicates no intent to overrule *Zahn*); Richard D. Freer, *Compounding Confusion and Hamper-* *ing Diversity: Life After* Finley *and the Supplemental Jurisdiction Statute*, 40 Emory L.J. 445, 485–86 (1991) (expressing regret that intent not to overrule *Zahn* is "buried in the legislative history"); Thomas D. Rowe, Jr., Stephen B. Burbank & Thomas M. Mengler, *Compounding or Creating Confusion About Supplemental Jurisdiction? A Reply to Professor Freer*, 40 Emory L.J. 943, 960 n. 90 (1991) (admitting that the statute could have been better drafted); Thomas C. Arthur & Richard D. Freer, *Grasping at Burnt Straws: The Disaster of the Supplemental Jurisdiction Statute*, 40 Emory L.J. 963, 981 (1991) (asserting that statutory language overrules *Zahn* and doubting that legislative history can save it); Karen N. Moore, *The Supplemental Jurisdiction Statute: An Important but Controversial Supplement to Federal Jurisdiction*, 41 Emory L.J. 31, 56–58 (1992) (indicating that, notwithstanding the legislative history, the language of section 1367 tracks closely the language suggested by the Federal Courts Study Committee, which, according to the author, expressed a desire to overrule *Zahn* ); Joan Steinman, *Section 1367—Another Party Heard From*, 41 Emory L.J. 85, 102–04 (1992) (similar); Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis*, 24 Ariz.St.L.J. 849, 973 (1992) (section 1367 should not be interpreted as overruling *Zahn* ).

To date, neither the Supreme Court nor any United States Court of Appeals has decided this issue. Several district courts, however, have refused to hold that section 1367 overruled *Zahn* in a class action context. *Mayo v. Key Fin. Servs., Inc.*, 812 F.Supp. 277, 278 (D.Mass.1993); *Averdick v. Republic Fin. Servs., Inc.*, 803 F.Supp. 37, 45–46 (E.D.Ky.1992); *Benfield v. Mocatta Metals Corp.*, No. 91 Civ. 8255 (LJF), 1993 WL 148978, 1993 U.S.Dist. LEXIS 5856 (S.D.N.Y. May 5, 1993); *Bradbury v. Robertson–Ceco Corp.*, No. 92 C 3408, 1992 WL 178648, 1992 U.S.Dist. LEXIS 10888 (N.D.Ill. July 22, 1992). Because *no* plaintiff alleges more than $50,000 in compensatory damages and punitive damages may not be

court is that ... the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less that the jurisdictional amount to justify dismissal.... But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

When it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount, the case must be dismissed, even if the jurisdictional deficiency becomes evident only after trial. *E.g., id.,* 303 U.S. at 290, 58 S.Ct. at 591; *City of Boulder v. Snyder,* 396 F.2d 853, 856 (10th Cir.1968); *Lynn v. Smith,* 193 F.Supp. 887, 894 (W.D.Pa.1961).

▮ It has neither been pleaded nor at any time asserted in this litigation that Upp or any class member is entitled to more than $50,000 in compensatory damages. Indeed, even if every cent of sweep fees Upp paid was unlawfully collected by Mellon, his compensatory damages would be only slightly over $4,000.[10] The complaint does, however, include a demand for punitive damages. When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied. *Bell v. Preferred Life Assur. Soc'y,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943); *A.F.A. Tours, Inc. v. Whitchurch,* 937 F.2d 82, 87 (2d Cir.1991); *Klepper v. First Am. Bank,* 916 F.2d 337, 341 (6th Cir.1990).

▮ We have held, however, that when a claim for punitive damages is "patently frivolous and without foundation" because such damages are unavailable as a matter of law, that claim must be stricken from the amount in controversy. *Gray v. Occidental Life Ins.*

*Co.,* 387 F.2d 935, 936 (3d Cir.1968). In addition, when it appears that such a claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny. *See Zahn v. International Paper Co.,* 469 F.2d 1033, 1033–34 n. 1 (2d Cir.1972), *aff'd,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). We turn then to the question of whether punitive damages may be recovered in Pennsylvania against a trustee. If they cannot, then this case must be dismissed for want of jurisdiction.

### B.

▮ The availability of punitive damages against a trustee is a quintessential state issue which a federal court must resolve by reference to the law as set forth by the state's legislature or highest court. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Here, the Supreme Court of Pennsylvania has not addressed this precise question, so we must predict how it would decide the issue were it confronted with the problem. *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661 (3d Cir.1980). In carrying out that task, we must

consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand. The rule of *Erie* calls on us to apply state law and not ... to participate in an effort to change it merely because we doubt its soundness.

*Id.,* at 663 (quotation omitted); *see also Nationwide Ins. Co. v. Resseguie,* 980 F.2d 226, 230 (3d Cir.1992). Because a federal court's prediction of state law, until and unless overruled by the state supreme court, tends to "verge on the lawmaking function" of the

---

recovered against a trustee under Pennsylvania law, we need not and do not resolve the issue.

**10.** Moreover, the sweep fees charged the entire class during the years 1981–1991 amounted to $55,638,000. *Upp,* 799 F.Supp. at 544. When this figure is divided by the 5,000 class members estimated by plaintiffs in their complaint, it nets

out to approximately $11,000 per member. At trial, however, the number of accounts managed by Mellon's trust department was estimated at 22,000. Although not all of these accounts were subject to a sweep fee, this further dilutes the potential compensatory damages available per class member.

highest state court, it is critical that the federal court do all within its power to view the problem before it as a state court would, and not through the eyes of a court steeped in federal law. *See* Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va. L.Rev. 1671, 1681–82 (1992). Accordingly, it must be recognized that a decision of a lower state court on a point of state law is generally more predictive of what the state supreme court would hold than is a conflicting opinion of a federal court on the same point.

There are few predictors of whether punitive damages may be recovered against a trustee under Pennsylvania law. Upp argues that we should look to analogous decisions of the Pennsylvania courts, which have permitted punitive damages to be imposed on fiduciaries other than trustees. While we agree that these cases must be considered, we do not find them dispositive, helpful, or even particularly predictive of the issue.

In *Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58, 69 (1989), the Supreme Court of Pennsylvania imposed punitive damages on an attorney guilty of malpractice, fraud and intentional withholding of critical information from his client. Likewise, in *Dean Witter Reynolds, Inc. v. Genteel*, 346 Pa.Super. 336, 499 A.2d 637, 642–43 (1985), the Superior Court imposed punitives on a stockbroker which had been recklessly indifferent to its client's investment objectives.

In both cases, liability for punitive damages was predicated on Pennsylvania's adoption of section 908(2) of the Restatement (Second) of Torts. Under that section, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Id.* Here, Mellon was statutorily entitled to charge its trust customers a reasonable sweep fee. Plaintiffs acknowledged as much in their complaint and never pleaded that Mellon's conduct was outrageous. At worst, Mellon charged its customers too much. Although perhaps it may be argued that Mellon's sweep fees were unreasonable, we cannot believe they could possibly be considered "outrageous" or "reckless," particularly in view of the fact that no court had ever decided what constitutes reasonableness under 20 P.A.Con.Stat.Ann. § 7315.1 until 1992. Moreover, Mellon's fees were comparable to, or even less than, those charged by other banks in the area. Likewise, while the notice Mellon provided its customers was allegedly insufficient, notice *was* provided. Again, perhaps Mellon's conduct was unreasonable, but as a matter of law it cannot be considered outrageous or reckless. Under Pennsylvania law, mere unreasonableness cannot support a claim for punitive damages. *See SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 704–05 (1991) (quoting *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 (1985) (Hutchinson, J.) (plurality opinion) (gross negligence insufficient)).

More important, the law of trusts is different from the law of torts. First, remedies against a trustee are governed by section 205 of the Restatement (Second) of *Trusts*, not section 908 of the Restatement (Second) of *Torts*. Although section 908 provides for punitive damages, section 205 does not, and while the Pennsylvania courts have not explicitly adopted section 205, they have on two occasions cited it as respectable authority. *See In re Estate of Kurkowski*, 487 Pa. 295, 409 A.2d 357, 361 (1979); *Old Penn Tavern, Inc. v. Kubiak*, 199 Pa.Super. 229, 184 A.2d 140, 142 (1962).

Second, the *corpus juris* of Pennsylvania trust law has been codified in the Probate, Estates and Fiduciaries Code ("PEFC"), 20 Pa.Cons.Stat.Ann. § 101 *et seq.* The PEFC, however, does not authorize punitive damages as a remedy against a malfeasant trustee. In light of Pennsylvania's view that punitive damages are rarely available and subject to strict judicial control, *see Martin*, 494 A.2d at 1096, the absence of statutory authority for such damages in the PEFC militates against predicting their availability. *See Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir.1983) (where D.C. law generally disfavored punitive damages, and plaintiff cited no authority for their application to the case before it, court refused to

consider punitive claim in jurisdictional amount).

■ Third, under sections 701 and 711 of the PEFC, a separate Orphans' Court division of the Courts of Common Pleas has been created with exclusive jurisdiction over testamentary and *inter vivos* trusts. In some Pennsylvania counties, judges are assigned exclusively to the Orphans' Court. The judges of these courts develop an expertise in the law of trusts. With that in mind, we turn to the one Orphans' Court case that has specifically decided that punitive damages may not be recovered against a trustee under Pennsylvania law.

In *Freedman Estate*, 1 Fiduc.Rep.2d 60 (O.C.Allegheny Co.1980) (*en banc*), certain trust beneficiaries sought punitive damages against their trustee for, *inter alia*, willful breach of fiduciary duties and misrepresentation. After noting that the Orphans' Court is "a court of equity governed in minute detail" by the PEFC, *id.* at 67, the court held that punitive damages are not recoverable under Pennsylvania law:

> Nowhere in the Probate, Estates and Fiduciaries Code is it provided that a wilfully, reckless fiduciary is also subject to exemplary damages although such a fiduciary might be required to pay for actual losses, counsel fees for the objectors and litigation costs. He may also be barred from other compensation. But none of these remedies which have accrued over hundreds of years of practice may be called punitive damages.... The objection to punitive damages is sustained and such allegation will be stricken from the complaint.

*Id.* at 68.[11]

Although a Pennsylvania Orphans' Court decision is not binding on us under *Erie*, such an opinion is "indicative of what the law of Pennsylvania may be." *See Brown v. Moore*, 247 F.2d 711, 721 (3d Cir.1957) (referring to Common Pleas opinions). This is particularly true with respect to *Freedman Estate*, which is a unanimous decision by five judges of the Allegheny County Orphans' Court, sitting *en banc*. These five judges, being specialists in trust law and the proper application of the PEFC, provide persuasive insight into how the Supreme Court of Pennsylvania would decide this issue, particularly absent any decisions on point by the state's appellate courts.

## C.

■ While none of these factors alone, with the exception of *Freedman Estate*, may be dispositive, taken as a whole they convince us that punitive damages simply cannot be recovered against a trustee under Pennsylvania law and the case must therefore be dismissed. The district court, however, used a different rationale and reached the opposite conclusion. Its analysis of the issue consisted of the following:

> In an appropriate case, punitive damages may be recoverable from a self dealing trustee. *Mosser v. Darrow*, 341 U.S. 267 [, 71 S.Ct. 680, 95 L.Ed. 927] (1951) (reorganization trustee had personal liability for breach of fiduciary duty, even though bankrupt entity suffered no loss); *Schoenholtz v. Doniger*, 657 F.Supp. 899, 913–15 (S.D.N.Y.1987) (punitive damages recoverable from ERISA trustee). In an analogous context, involving breach of fiduciary duty by a brokerage firm to its customers, the Pennsylvania Superior Court held that an award of punitive damages was appropriate. *Dean Witter Reynolds, Inc. v. Genteel*, 346 Pa.Super. 336, 499 A.2d 637 [sic]. Where there is conduct which, together with the circumstances, including the motive of the wrongdoer and the relation between the parties, is especially egregious, it is within the discretion of the fact finder to award punitive damages. *Id.*

*Packard v. Provident Nat'l Bank*, No. 91–5229 (E.D.Pa. Jul. 28, 1992) (order denying motion for stay); *see also Upp*, 799 F.Supp. at 546 (citing same cases with more abbreviated analysis).

While we disagree with the district court's citation of *Genteel* as authority in favor of

---

11. On appeal, the Superior Court declined to address the issue of punitive damages, on the sole ground that the issue was interlocutory and not properly before the court. *In re Estate of Freedman*, 307 Pa.Super. 413, 453 A.2d 651, 655 (1982).

punitive damages for the reasons already stated, we are more troubled by the first two citations. In *Mosser*, a self-dealing trustee in New York was denied compensation and was required to disgorge unlawfully made profits, but was *not* held liable for punitive damages. *Mosser* therefore, is totally inapposite and has no predictive power whatsoever for Pennsylvania law.

■ *Schoenholtz* was an ERISA case in which the issue was whether punitive damages were available against a plan trustee. After a detailed statutory analysis, the court looked to traditional trust principles and determined that such damages were generally available under the common law of trusts "where malice or fraud is involved." 657 F.Supp. at 914.

*Schoenholtz*, however, was decided under principles of federal common law, in a situation where the district court was specifically instructed by Congress to look to traditional principles of trust law, regardless of jurisdiction, in construing the ERISA.[12] Distilling a federal common law rule from the laws of the several states is a far different inquiry, however, than predicting the law of a single state, which was the task before the district court.

■ When a district court sets out to predict state law, it sits, in effect, as a state court. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967). The decisions of that state's own courts must therefore be searched thoroughly and given preeminence, at least in the absence of convincing evidence the state supreme court would not follow them. *See*

*Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177–78, 61 S.Ct. 176, 178, 85 L.Ed. 109 (1940). Where the lower courts of the state have addressed the issue before the federal court, the decisions of other states' courts are not especially convincing predictors, unless those decisions represent a majority rule or a strongly emerging trend that the state supreme court would follow in abrogation of the lower state court decisions.[13]

It appears to us that the district court did not accurately predict Pennsylvania law as it was required to as an *Erie*-bound federal court. It cited only three cases, and with very little explanation of their applicability. Only one case was from a Pennsylvania court, and it did not involve a trustee. In addition, the district court did not consider *Freedman Estate*, which is the single most predictive case on point, and relied instead on two federal decisions, both of which are poor predictors of state law.

■ It is axiomatic that federal courts are courts of limited jurisdiction, and as such are under a continuing duty to satisfy themselves of their jurisdiction before proceeding to the merits of any case. *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir.1990); *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n*, 657 F.2d 29, 36 (3d Cir.1981). Here, it was evident from the face of the complaint that the amount in controversy might be problematic, and Mellon three times moved the district court to examine the question of subject matter jurisdiction. The district court, however, provided a reasoned analysis only on the third order. We are constrained to point out that

12. In any event, the Second Circuit, in another case dealing with this issue after the district court's decision in *Upp*, disagreed with the *Schoenholtz* holding, stating:
   Trustees generally are not subject to punitive damages at common law for a breach of fiduciary duty. The exception permitting recovery of punitive damages in cases of fraud or extreme disloyalty is just that—an exception—occasionally awarded in a few states.
   *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir.1992) (citing cases).

13. We completely reject Upp's contention that because, among the various states, punitive damages represent the majority rule, we should hold them available under Pennsylvania law. *See*

George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 862 (rev. 2d ed. 1982 & Supp.1992). Although Bogert states that "punitive damages may be awarded where malice or fraud is involved," *id.*, an examination of the cases cited in the main text and the 1992 supplement reveals that this is a minority rule, followed by perhaps one-fourth of the states. Moreover, the trustees' misconduct in those cases was typically far more egregious than that present here, usually involving fraud or other quasi-criminal actions, sometimes even outright embezzlement. We cannot say, then, that either Bogerts' assertion or their cited cases are sufficient to overcome the countervailing evidence that punitive damages against trustees are not available in Pennsylvania.

when a district court dismisses jurisdictional challenges with little or no analysis and then imposes punitive damages after a trial on the merits, two unfortunate perceptions may be fostered in the eyes of the losing party, the bar and the public. First, it may appear as if the court has failed to give the jurisdictional issues the full attention they require, and second, it may appear that the court's desire to reach the merits of the case has obscured its judgment of its jurisdiction to do so. The purpose of reasoned elaboration is to prevent such perceptions, as well as to insure that the court gives careful consideration to the issue before it.

### D.

As a separate ground for affirmance, Upp points out that the complaint included a demand for injunctive relief and argues that we should measure the jurisdictional amount not by the damages of the plaintiffs, but by the costs to Mellon in complying with it. We decline to do so.

▬▬▬ In a diversity-based class action seeking primarily money damages, allowing the amount in controversy to be measured by the defendant's cost would eviscerate *Snyder's* holding that the claims of class members may not be aggregated in order to meet the jurisdictional threshold. *See, e.g., Snow v. Ford Motor Co.*, 561 F.2d 787, 790–91 (9th Cir.1977); *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597, 599 (10th Cir.1970); *National Org. for Women v. Mutual of Omaha Ins. Co.*, 612 F.Supp. 100, 107–08 (D.D.C.1985). We will not permit plaintiffs to do indirectly that which they cannot do directly.[14] Moreover, we have stated that a plaintiff may not turn what is essentially a legal claim into an equitable one merely by demanding an injunction requiring the payment of money. *Penn Terra Ltd. v. Department of Env. Resources*, 733 F.2d 267, 276 (3d Cir.1984) (quoting *Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979)). Here, virtually all the relief sought is remediable by money damages. The only truly equitable relief sought in this case is an order requiring Mellon to provide adequate notice of its sweep fees to trust beneficiaries and to tie future sweep fees to the cost of providing the service. Plaintiff, however, has not presented the district court with any data whatsoever regarding Mellon's estimated cost of complying with such an order. Accordingly, we could not consider that cost even if we were to agree with Upp's "defendant's cost" theory.

### III.

Because the requisite amount in controversy was, to a legal certainty, never recoverable, the district court lacked subject matter jurisdiction over the case. We will therefore vacate its judgment and remand with instructions to dismiss the complaint.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges.

### SUR PETITION FOR REHEARING

#### June 18, 1993.

The petition for rehearing filed by appellee in the above-entitled case having been sub-

---

14. There are exceptions to the non-aggregation rule, but none apply here. First, aggregation is permitted when class members sue jointly to enforce a common title or right in which they have a common and undivided interest. *Zahn*, 414 U.S. at 294, 94 S.Ct. at 508. Such a common fund situation does not exist here. Rather, plaintiffs asserted that Mellon's sweep fees were excessive. Thus, each class member was injured individually, and in a unique amount that in theory must be proved separately. *See Sellers*, 701 F.2d at 579. Second, aggregation has been allowed when plaintiffs join to abate a continuing nuisance, even when a pendent claim for damages is present as well. *See Justice v. A.T. & S.F. Ry. Co.*, 927 F.2d 503 (10th Cir.1991). Nothing like that is even remotely present here.

Nor does *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), help plaintiffs. There, a state agency sued individually to enforce the rights of its members, not as representative of a class. The issue in *Hunt* was the constitutionality of a state statute, the suit having been brought under federal question jurisdiction, 28 U.S.C. § 1331, which at that time had an amount in controversy requirement. The *Hunt* Court, while it took into account the losses of the plaintiff's members for jurisdictional purposes, was not faced with the diversity-based class action situation present here. We are convinced that the Supreme Court did not intend to overrule *Snyder sub silentio* when it decided *Hunt*.

mitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.