### Daniel PIERSON, et al.

### v.

### SOURCE PERRIER, S.A., et al.

### Civ. A. No. 93–5121.

United States District Court, E.D. Pennsylvania.

March 24, 1994.

---

C. Oliver Burt, III and Michael D. Gottsch, Chimicles, Jacobsen & Tikellis, Haverford, PA, for plaintiff.

David J. Wolfsohn, Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, Philadelphia, PA, for defendants.

### MEMORANDUM

GILES, District Judge.

Defendants removed this action from state court, asserting that this court has diversity jurisdiction. Plaintiff now moves for re-

mand. For the reasons stated below, plaintiff's motion will be granted.

## I. INTRODUCTION

Plaintiff Daniel Pierson ("Pierson") filed the instant case in the Philadelphia County Court of Common Pleas as a putative class action on behalf of all residents of Pennsylvania who purchased Perrier brand sparkling water for personal, family, or household purposes between February 15, 1986 and February 15, 1990. Complaint ¶ 9.[1]

The complaint alleges that defendants (collectively "Perrier") misrepresented through advertising and labeling that their sparkling water is not processed and filtered before it is bottled. The complaint asserts two claims under Pennsylvania law: Count I claims that Perrier violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. § 201–1 et seq., and Count II asserts a claim for breach of warranty under the Uniform Commercial Code, 13 Pa.C.S. §§ 2313 & 2314. Plaintiffs seek: (1) actual damages and multiple damages "as authorized by statute" plus damages under the breach of warranty claim; (2) punitive damages; (3) an order permanently enjoining defendants from "continuing, maintaining, or reviving the unlawful conduct alleged" in the complaint; (4) disgorgement of profits plaintiffs obtained through their alleged unlawful conduct; and (5) any other, further relief as the Court may deem proper. Complaint at ¶ 34(a)-(e).

Perrier removed the case, asserting that this court has diversity jurisdiction. See 28 U.S.C. §§ 1332 & 1441. Pierson now moves that the case be remanded to state court, asserting that this court lacks subject matter jurisdiction because the amount in controversy does not exceed $50,000.

## II. DISCUSSION

This court has diversity jurisdiction only if the parties are of diverse citizenship and the amount in controversy exceeds $50,000, exclusive of interest and costs. 28 U.S.C.

---

1. The parties have stipulated that a motion for class certification will not be filed until after the resolution of the instant motion to remand.

§ 1332(a). In the instant case, it is undisputed that diversity of citizenship exists.[2] The only question before us is whether the amount in controversy requirement is met.

■ The requirement that the amount in controversy be greater than $50,000 "must be narrowly construed so as not to frustrate the congressional purpose behind it: to keep the diversity caseload of the federal courts under some modicum of control." *Packard v. Provident National Bank*, 994 F.2d 1039, 1044-45 (3d Cir.1993), *cert. denied, Upp v. Mellon Bank, N.A.*, — U.S. —, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993). As the party asserting jurisdiction, Perrier bears the burden of showing that the case is properly before the court at all stages of the litigation. *Id.* All doubts concerning jurisdiction should be resolved in favor of remand. *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir.1985).

■ In a diversity-based class action, "[i]t is well-settled that ... members of the class may not aggregate their claims in order to reach the requisite amount in controversy." *Packard*, 994 F.2d at 1045 (citing *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). Instead, "*each* member of the class must claim at least the jurisdictional amount." *Packard*, 994 F.2d at 1045 (citing *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)). Thus, this case must be remanded unless the amount in controversy exceeds $50,000 for Pierson and for each member of the putative class.

Perrier does not argue that the total value of the relief available to each putative plaintiff could possibly amount to more than $50,-000. Instead, it argues that an exception to the "non-aggregation" rule, which permits aggregation of claims "when class members sue jointly to enforce a common title or right

in which they have common and undivided interest," *Packard*, 994 F.2d at 1050 n. 14 (citing *Zahn, supra*), applies in the instant case. In addition, defendants argue that the jurisdictional limit is met because the cost to them of the injunctive relief sought by plaintiffs would exceed $50,000. The court rejects both arguments.[3]

### A. Common And Undivided Interest

■ A "common and undivided interest," allowing plaintiffs to aggregate their claims, exists only when plaintiffs' claims "derive from rights which they hold in group status." *Potrero Hill Community Action Committee v. Housing Authority of San Francisco*, 410 F.2d 974, 978 (9th Cir.1969). Even if plaintiffs' claims present common questions of law and fact, as they must if they are to be certified as a class, it does not necessarily imply that their rights are held in group status. *United States v. Southern Pacific Transp. Co.*, 543 F.2d 676, 683 (9th Cir.1976). Aggregation is not allowed where each class member claims an individual injury, such as a unique amount, that in theory must be proved separately. *Packard*, 994 F.2d at 1050 n. 14.

Perrier argues that plaintiffs' request for disgorgement of profits and punitive damages creates a "common and undivided interest" in the instant case. The court disagrees. The proper focus should not be upon the type of relief that plaintiffs seek, but rather upon the nature and value of the rights that they have asserted. *See Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir.1977) (citing *Weiss v. Sunasco, Inc.*, 316 F.Supp. 1197, 1201 (E.D.Pa.1970)).

Disgorgement of profits is an equitable remedy for unjust enrichment, *Hateley v. SEC*, 8 F.3d 653, 655 (9th Cir.1993) (citing *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir.1991)). Its main purpose is to ensure that those

---

**2.** Defendants Source Perrier, S.A. and Societe Generale de Grandes D'Eaux Minerales Francaises are corporations incorporated under the laws of France, with their principal places of business in France. Notice of Removal at ¶ 10. Defendants Perrier Group of America, Inc. and Great Waters of France, Inc. are corporations incorporated under the laws of Delaware, with their principal place of business in Connecticut. *Id.* at ¶ 11. Plaintiff Daniel Pierson and all puta-

tive class members are citizens of Pennsylvania. Complaint ¶ 9.

**3.** In *Kasky v. Perrier*, No. 91-0489-R (M) (S.D. Cal. Sept. 16, 1991), a case almost identical to the instant one, the district court rejected similar arguments by Perrier and remanded the action to state court.

guilty of fraud do not profit from their ill-gotten gains. *Wang*, 944 F.2d at 81. However, plaintiffs' claims cannot be aggregated simply because they frame their prayer for damages as equitable, rather than legal, relief. *Packard*, 994 F.2d at 1050. Plaintiffs seek disgorgement of profits as a means of obtaining money damages. To allow the amount in controversy to be measured by defendant's cost simply because the prayer for relief is partially phrased in terms of an equitable remedy "would eviscerate [the rule] that the claims of class members may not be aggregated in order to meet the jurisdictional threshold." *Packard*, 994 F.2d at 1050.

Similarly, the request for punitive damages cannot be aggregated. Pennsylvania law requires that the amount of punitive damages awarded to each plaintiff must "be reasonably related to the amount of actual damages suffered" by him or her. *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357, 377 (E.D.Pa.1982) (citing *Givens v. W.J. Gilmore Drug Co.*, 337 Pa. 278, 10 A.2d 12, 16 (1940)), *aff'd*, 760 F.2d 481 (3d Cir.1985); *accord, Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1279 (3d Cir.1979) (citing *Hughes v. Babcock*, 349 Pa. 475, 481, 37 A.2d 551, 554 (1944)). Thus, each member of the putative class holds a separate and distinct interest in a punitive damages award. *Accord Kasky et al. v. Perrier Group of America et al.*, No. 91–0489–R(M), slip op. at 6 (C.D.Cal. Sept. 14, 1991) ("The right to punitive damages is held by each plaintiff individually.").

## B. Injunctive Relief

■ Perrier argues that this court has jurisdiction because plaintiffs seek an injunction that would cause them to change their advertising, and the costs of that injunction to Perrier would be far greater than $50,000. Pierson contends, however, that Perrier's position was directly rejected by the court of appeals in *Packard*, 994 F.2d at 1050. We find that the *Packard* court did not squarely address this issue. However, because the longstanding rule in this circuit is that, for purposes of determining the amount in controversy, the value of equitable relief must be determined from the viewpoint of the plain-tiff rather than the defendant, we reject Perrier's argument that the cost to them of complying with the injunction should be considered.

In *Packard*, the plaintiff argued, as does Perrier here, that the court should measure the jurisdictional amount not by the benefit sought by each plaintiff, but instead by the defendant's cost of compliance. The third circuit declined to do so, stating that "we will not permit plaintiffs to do indirectly that which they cannot do directly.... [A] plaintiff may not turn what is essentially a legal claim into an equitable one merely by demanding an injunction requiring the payment of money." *Packard*, 994 F.2d at 1050 (citing *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 276 (3d Cir.1984); *Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir.1979)).

The instant case is distinguishable from *Packard*, however, because in that case "virtually all the relief sought [was] remediable by money damages." Plaintiff had not presented the district court with any data regarding the estimated cost defendant would incur by complying with the requested "truly" injunctive relief. The third circuit therefore did not reach the issue of whether the amount in controversy could be measured from the defendant's point of view in a case where the plaintiff class called for "truly" injunctive relief, the cost of which exceeded $50,000 for the defendant. 994 F.2d at 1050.

While *Packard* did not squarely address the issue of whether the defendant's cost of compliance could be used to calculate the amount in controversy, the rule in this circuit has long been that "in a suit for an injunction, the amount in controversy is determined by the value of the object to be gained by the plaintiff." *Campbell Soup Co. v. Diehm*, 111 F.Supp. 211, 214 (E.D.Pa.1952) (citing *Glenwood Light and Water Co. v. Mutual Light, Heat and Power Co.*, 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174 (1915); *John B. Kelly, Inc., v. Lehigh Navigation Coal Co.*, 151 F.2d 743 (3d Cir.1945), *cert. denied*, 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946)); *accord, Comprehensive Group Health Services Board of Directors v. Temple University*, 363 F.Supp. 1069, 1094

(E.D.Pa.1973); *Northeastern Pennsylvania National Bank and Trust Co. v. Sandvick Steel, Inc.*, 325 F.Supp. 651, 654 (M.D.Pa. 1971).

The ninth circuit has considered an injunctive claim similar to the one made by plaintiffs in the instant case. In *Snow v. Ford Motor Co.*, 561 F.2d 787 (9th Cir.1977), a group of consumers sued Ford for damages and injunctive relief for falsely advertising "trailering special packages" that did not contain wiring kits to connect the trailer's electrical system to that of the towing vehicle. *Id.*, 561 F.2d at 788. The ninth circuit found that "[t]he right asserted by plaintiffs is the right of individual future consumers to be protected from Ford's allegedly deceptive advertising which is said to injure them in the amount of $11.00 each." *Snow*, 561 F.2d at 790–91. Therefore, the jurisdictional minimum was not met. Were it to decide otherwise, the court proclaimed, "All that plaintiffs would need to do to avoid the [non-aggregation] rule of *Snyder* and *Zahn* would be to pray for an injunction." *Snow*, 561 F.2d at 791.

Similarly here, the object sought by each putative plaintiff is to be free from deceptive advertising. To allow the amount in controversy to be measured by the cost to the defendant of complying with requested injunctive relief would be the same as allowing aggregation of the plaintiff's claims. *See Snow*, 561 F.2d at 790. Because we have already determined that the claims in this case are not common and undivided, aggregation will not be allowed, and the value of the requested injunctive relief must be calculated from the point of view of each member of the putative class.

### III. CONCLUSION

The "common and undivided" interest test used to determine whether or not to aggregate multiple plaintiffs' claims for jurisdictional purposes has been described by commentators and courts as "mystifying," Charles A. Wright, *Law of Federal Courts* § 36 at 196 (4th ed. 1983) (quoting *Aetna Casualty & Surety Co. v. Graves*, 381 F.Supp. 1159, 1162 (W.D.La.1974)), and "a perpetual source of confusion for the federal courts," Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis*, 24 Ariz. St.L.J. 849, 996 n. 592 (1992). Nevertheless, it is clear that members of the putative class in the instant case do not seek to enforce a right in which they have a common and undivided interest and that, therefore, their claims cannot be aggregated. Because it is undisputed that the amount in controversy, if not aggregated, does not exceed $50,000, Pierson's Motion to Remand is granted.