Peters, Appellant, *v.* Stroudsburg Trust Company.

Argued November 24, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*David B. Skillman,* with him *Detleff A. Hansen,* for appellant.

*C. D. Shull,* of *Shull, Shull & Kitson,* for appellee.

OPINION BY MR. JUSTICE DREW, January 3, 1944:

This is a trespass action for deceit and fraud. The trial resulted in a non-suit after plaintiff persistently refused to accept the view of the learned court below on what constitutes the true measure of damages.

The evidence was sufficient, if believed by the jury, to make out a case of deceit and fraud. Only proof as to damages stood between plaintiff and the jury. A few of the facts are necessary to understand the conflicting views of the parties.

Harry E. Peters, plaintiff below and appellant here, did business with the Stroudsburg Trust Company, now by merger, the Stroudsburg Security Trust Company,

since it opened its doors in 1920. He was an original depositor, his account having been secured by C. B. Eilenberger, the Treasurer and Trust Officer, and in the years that followed he transacted much business with him as the representative of the Bank. One of these transactions resulted in this suit. In 1926, Mr. Eilenberger advised plaintiff to purchase from the Bank bonds of the Central Realty Corporation in the amount of $10,000 which were owned by the Bank. These bonds represented one-half of an issue against a mortgage of $20,000 of the Realty Corporation, held by the Bank on its building known as the "Times Building". In 1929 Eilenberger and another officer of the Bank, the Assistant Treasurer, separately informed plaintiff that the Realty Corporation wished to increase its loan to $35,000 and to issue bonds in that amount. They asked plaintiff to exchange his $10,000 in bonds on the old mortgage for $10,000 of the bonds to be issued under the new mortgage, so that the old mortgage might be satisfied. To induce plaintiff to make this exchange, they represented to him that in addition to the "Times Building", which was the sole security under the old mortgage, the new mortgage would also be a first lien on certain other real property of the Central Realty Corporation, naming two properties occupied by gasoline service stations, well known to plaintiff, one in the Borough of Stroudsburg and the other in the Borough of East Stroudsburg. It was represented by Eilenberger that there was an option to buy the latter for $25,000. Other material but false representations were made. Plaintiff was persuaded and on December 1, 1929, made the exchange. In 1933 no interest was paid and the bonds were in default. Plaintiff then looked to his security, the mortgages upon which the bonds were issued, and found that the gas station properties were not included in the mortgage and that the only security mentioned there was the "Times Building", the very same security he had for the former bonds under the first mortgage. Plaintiff found on investigation that when the

Bank officials told him the East Stroudsburg station was owned by the Central Realty Corporation, and was encumbered by the new mortgage, it was not only not owned by the Central Realty Corporation, but was owned by the Bank itself. And plaintiff also found that in 1930 the Bank conveyed this property to C. J. Neyhart and received as part payment an $18,000 mortgage, which it immediately assigned to the Vacuum Investment Corporation for $18,000, in cash.

In 1936, the "Times Building" was sold for $12,-342.96, and ten thirty-fifths of the proceeds, or $4,406, were paid to plaintiff. He now asserts a loss of $5,594—the difference between the $10,000 he invested and the $4,406 he received. In pleading the measure of damages, he averred that he was entitled to receive his proportionate part of the security value of the property which the Bank had represented to him to be included in the security for the repayment of the principal of the bonds. He says he is entitled to ten thirty-fifths of the $18,000 received by the Bank for the gas station property because he would have received it if the representations made to him by the Bank had been true. At the trial plaintiff definitely refused to include in his offer to prove damages "any evidence of the value of the bonds as received at the time of this exchange."

What plaintiff seeks is to recover the value of his bargain. And he is perhaps partly persuaded to use this standard because the figures,—what he received plus what he claims of the $18,000,—by a mere coincidence, equal $9,548.85, very nearly the amount of his investment. If the gas station property had sold for only $1,-800, this arithmetic method to prove damages would not be so attractive.

There are a few jurisdictions in which, in cases of deceit and fraud, plaintiff is allowed the value of his bargain. But such is not the rule in Pennsylvania. Here he can recover only his actual loss. In *Curtis v. Buzard,* 254 Pa. 61, 64, 98 A. 777, we approved the following

statement of the learned trial judge: ". . . the measure of damages in an action of deceit for fraud in the sale of stock is, . . . the difference between what the plaintiff was induced to pay for the stock and its actual value at the time of the purchase." The amount of damages recoverable under such circumstances, is, as stated by this Court in *High v. Berret,* 148 Pa. 261, 264, 23 A. 1004, "the money he has parted with without receiving an equivalent therefor".

We said in *Cunningham v. Ray,* 263 Pa. 492, 497, 106 A. 884: "Ordinarily, in assessing damages, the endeavor is 'to give actual compensation by graduating the amount of the damages exactly to the extent of the loss' (GIBSON, C. J., quoted in Kountz v. Kirkpatrick, 72 Pa. 376, 387) ; and the measure of damages in an action for deceit in the sale of property is the loss which the fraud inflicts,—that is, the difference between the real, or market, value of the property at the time of the transaction and the higher, or fictitious, value at which it was purchased." *Browning v. Rodman,* 268 Pa. 575, 111 A. 877; *Hoagland v. Mulford,* 298 Pa. 588, 148 A. 864; *Bishoff v. Valley Dairy Co.,* 302 Pa. 125, 153 A. 133; *Emery v. Third Nat. Bank of Pbg.,* 308 Pa. 504, 162 A. 281.

On December 1, 1929, at the time the exchange of bonds was made, if they were of equal market value, plaintiff "got as good as he gave" and lost nothing by the transfer; if the contrary is true, and at that time, by reason of deceit and fraud, he was induced to part with his bonds for other bonds of much less market value, his measure of damages is the difference between the market value of that which he gave and that which he received. There is nothing in the record to indicate the market value of either the first or second bonds at the time of the exchange, or at any other time. It was impossible, therefore, for a jury to pass upon the alleged loss, and because of failure of plaintiff to show any loss the learned court properly entered a non-suit. And since

the motion to take off was based solely on this alleged error, the court could not do other than refuse the motion.

Judgment affirmed.