

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-1996

# State Farm Auto v. Powell

Precedential or Non-Precedential:

Docket 95-3530

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"State Farm Auto v. Powell" (1996). *1996 Decisions*. Paper 157.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-3530


STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

v.

HERBERT POWELL,

Appellant



Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil Action No. 94-604)



Submitted Under Third Circuit LAR 34.1(a)
May 23, 1996



Before:  SLOVITER, Chief Judge,
and SAROKIN and OAKES, Circuit Judges

(Filed June 24, 1996)


OPINION OF THE COURT


Thomas A. McDonnell, Esq.
Summers, McDonnell, Walsh
& Skeel
707 Grant Street
2400 Gulf Tower
Pittsburgh, PA  15219

Attorney for State Farm Mutual Automobile
Insurance Company

Dallas W. Hartman, Esq.
Richard R. Morelli, Esq.
Dallas W. Hartman, P.C.
2815 Wilmington Road

New Castle, PA  16105

Attorneys for Herbert Powell


SAROKIN, Circuit Judge.

     Appellee State Farm Mutual Automobile Insurance Company
("State Farm"), an Illinois corporation, filed an action for a
declaratory judgment in federal district court, seeking a
declaration regarding its obligations to appellant Herbert Powell
("Powell") under insurance policies it had issued to him for
underinsured motorist coverage.  The district court ultimately
granted summary judgment in favor of State Farm.
     On appeal, we dismiss this matter for lack of jurisdiction.
While State Farm alleged diversity jurisdiction under 28 U.S.C.
1332(a), we conclude that the amount in controversy does not
exceed $50,000.
                              I.
     On May 11, 1991, Powell was struck by a vehicle owned by
Kenneth Wagner, sustaining personal injuries.  He received
$25,000 from Wagner's insurance company, which was the maximum
amount of coverage under Wagner's policy.
     Powell then sought coverage under policies he had purchased
from State Farm.  Under Pennsylvania law, an insured may "stack"
his coverage for uninsured or underinsured motorist coverage;
that is "[t]he limits of coverages available . . . shall be the
sum of the limits for each motor vehicle as to which the injured
person is an insured." 72 Pa. Cons. Stat. Ann.  1738(a).  At the
time he sought coverage, both Powell and State Farm believed that
Powell had purchased three policies from State Farm which could
be applied to the accident, each of which provided for $50,000
coverage per person.  Powell thus sought $150,000 from State Farm
to compensate him for his injuries from the accident.
     State Farm refused to provide him with the requested
coverage because Powell had executed a waiver of his stacking
rights in exchange for a reduction in his monthly premiums from
$18 to $11.  The language of the waiver signed by Powell reads as
follows:
     By signing this waiver, I am rejecting stacked limits
     of underinsured motorist coverage under the policy for
     myself and members of my household under which the
     limits of coverage available would be the sum of limits
     for each motor vehicle insured under the policy.
     Instead, the limits of coverage that I am purchasing
     shall be reduced to the limits stated in the policy. I
     knowingly and voluntarily reject the stacked limits of
     coverage.  I understand that my premiums will be  reduced if I reject
this coverage.
Appendix at 51-52.  State Farm believed that, based upon the
language, Powell was entitled to a total of only $50,000 from
State Farm, and it entered into a settlement with Powell to pay
this amount on November 4, 1993.  Powell, however, maintained
that his signature on the waiver did not bar him from stacking

separate insurance policy coverage.

State Farm eventually filed an action in federal district court for declaratory judgment on April 13, 1994 in order to determine its responsibilities under the policy. In its complaint, it alleged that although Powell had three insurance policies in effect at the time of the Wagner accident, Powell had executed a valid waiver of his stacking rights and it requested the district court to declare "that the plaintiff, State Farm Mutual Automobile Insurance Company, is only obliged to provide underinsured motorists coverage in the instant case in an amount of $50,000. . . ." App. at 15-16. State Farm subsequently discovered that one of the three policies it issued to Powell was not purchased until after the accident at issue here, and it thus filed a motion to amend its complaint accordingly, which was granted.

Both parties moved for judgment on the pleadings, and Powell moved for partial summary judgment. All three motions were denied by the district court. See State Farm Mut. Auto. Ins. Co. v. Powell, 879 F. Supp. 538 (W.D. Pa. 1995). The court rejected Powell's theory that the waiver he signed barred stacking only in cases where a single policy insured more than one car, not when an insured purchased separate policies for separate cars. Id. at 541. However, it also stated that disputed factual questions remained as to how many policies were in effect at the time of the Wagner accident and whether Powell received any consideration for his waiver. Id. Thus, it also denied State Farm's motion.

Powell subsequently filed another motion for summary judgment, in which he stated that two policies were in effect at the time of the accident and that he received a $7.00 savings per policy as a result of executing the waivers at issue. However, he took issue with the district court's previous analysis of the meaning of the waivers he had signed and requested that the court enter a declaratory judgment that he was entitled to a total of $100,000 in underinsured motorist coverage.

State Farm also filed a new motion for summary judgment, requesting that the court enter a declaration that Powell was barred from stacking his underinsured motorists coverage on his two policies, and that State Farm "is only obliged to provide motorist coverage of the instant case in the amount of $50,000 . . . ." App. at 206-7.

This time the district court granted summary judgment in favor of State Farm, entering a declaration stating:

    (1) 75 Pa.Cons.Stat.Ann. 1738 bars Defendant, Herbert Powell, in the instant case from stacking UIM coverage on the two vehicles in his household insured with Plaintiff, State Farm Mutual Automobile Insurance Company;

    (2) Plaintiff, State Farm Mutual Automobile Insurance company, is only obliged to provide underinsured motorist coverage in the instant case in the amount of $50,000.

    Powell appeals from this order.

## II.

As an initial matter, Powell argues that diversity jurisdiction is lacking under 28 U.S.C. 1332(a) because the amount in controversy does not exceed $50,000, and that the judgment below thus should be dismissed. Although Powell did not raise this jurisdictional issue below, we may address it for the first time on appeal "[b]ecause the limited subject matter jurisdiction of the federal courts is so fundamental a concern in our system." Page v. Schweiker, 786 F.2d 150, 153 (3d Cir. 1986) (citing Mitchell v. Maurer, 293 U.S. 237, 244 (1934)).

In St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1937), the Supreme Court announced the following rule regarding the requisite amount in controversy for purposes of diversity jurisdiction:

> [U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

Id. at 288-89. See also Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).

In the instant matter Powell does not claim that State Farm alleged its amount in controversy in bad faith. Rather, he explains in his brief before this court that when this action was originally filed, both parties mistakenly believed that three separate insurance policies, each providing $50,000 coverage, were in effect on the date of Powell's injury. However, when the parties later discovered that one of the policies was purchased after the accident occurred, and the complaint was amended to reflect that discovery, it became clear that only two policies, valued at $100,000 total, formed the subject matter of the litigation.

Powell asserts that with only two policies applicable to the accident, it is clear "to a legal certainty" that the actual amount in controversy is only $50,000 -- a penny shy of the jurisdictional minimum. He explains that at the time State Farm filed its declaratory judgment action in federal court, it had already entered a settlement to pay him $50,000 under one policy. Thus, all that remained in dispute at the time the suit was filed was $50,000 from the other policy.

State Farm counters with three alternative arguments in support of jurisdiction. First, it asserts that because diversity jurisdiction was proper when the complaint was filed, it should not be disturbed by subsequent events. Second, it argues that even if the third policy is not considered, its "total potential exposure" of $100,000 (the sum of the remaining two policies) is the actual amount in controversy. Appellee's Brief at 14. Third, it contends that even if only one policy is "at issue," the arbitration costs provided for in the policy should be considered in determining the amount in controversy. Id. at 14-15. We will consider each of these arguments in turn.

## A.

State Farm first argues that the federal courts retain jurisdiction over this matter because, at the time that it filed its complaint, it believed that three $50,000 insurance policies were at issue, totalling $150,000, and subsequent events cannot destroy jurisdiction if jurisdiction was proper when the complaint was filed.  It is true that a federal court's jurisdiction ordinarily depends upon "the facts as they exist when the complaint is filed," Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989), and thus subsequent events that reduce the amount in controversy below the statutory minimum do not require dismissal. See Jones v. Knox Exploration Corp., 2 F.3d 181, 182-83 (6th Cir. 1993).  However, "[a] distinction must be made . . . between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." Id. at 183 (emphasis added).

With respect to the issue regarding the number of policies at issue in the case, State Farm's situation falls into the latter category.  In its motion for summary judgment, State Farm admits that "[w]hile initially there was some dispute as to this matter, it has since been determined and agreed upon that at all times relevant hereto, the Defendant had two separate policies of insurance issued by the Plaintiff insuring two separate vehicles owned by the Defendant." App. at 204.  Under these circumstances, the discovery that one of the original three policies was not in effect during Powell's accident should be considered a revelation that only two policies were at issue when the litigation was commenced, not a "subsequent event."  Accordingly, jurisdiction must be assessed based upon the factual reality that only two policies were in effect at the time of the accident.

## B.

State Farm next argues that, even if the court does not consider the third insurance policy once thought to be at issue in determining diversity jurisdiction, the amount at issue continues to exceed $50,000.  It avers that under the two policies actually at issue, its total exposure is $100,000 and that this amount should be considered the amount in controversy.

State Farm, however, never denied that it was obligated to provide Powell with at least $50,000 in coverage.  In fact, the relief it sought from the district court was a declaration that it was "only obliged to provide underinsured motorist coverage in the instant case in the amount of $50,000." App. at 207.  Thus, from the outset of this litigation State Farm conceded that it owed Powell $50,000; it merely sought to limit its obligation to that figure out of his alleged $100,000 in underinsured motorist coverage.  Indeed, as evidenced by the letter dated November 4, 1993 from State Farm to Powell, State Farm actually entered into a settlement with Powell to pay him the $50,000 prior to the commencement of this action.  Simple arithmetic demonstrates that at the time that the action was filed, then, only $50,000 was in controversy.

## C.

State Farm finally argues that even if the Court finds -- as

we do -- that only the $50,000 policy for which no payment was received is at issue in this case, its contractual duty to pay arbitration costs brings the amount in controversy above the jurisdictional prerequisite.  State Farm points to language in the insurance policies at issue that provides for the parties to pay certain costs related to arbitrating the underlying insurance motorist claim.  The relevant language reads as follows:

> If there is no agreement [between the insured and State Farm regarding whether the insured is legally entitled to collect damages or the amount of such damages], these questions shall be decided by arbitration at the request of the insured or [State Farm.] . . .

                         *    *    *

> The cost of the arbitrator and any expert witness shall be paid by the party who hired them.  The cost of the third arbitrator and other expenses of the arbitration shall be shared equally by both parties.

App. at 33.

State Farm points out that, while costs and attorneys' fees are not normally considered when determining the amount in controversy, "where the underlying instrument or contract itself provides for their payment, costs and attorneys' fees must be considered in determining the jurisdictional amount." Nationwide Mut. Ins. Co. v. Rowles, 818 F. Supp. 852, 854-55 (E.D. Pa. 1992) (citing Springstead v. Crawfordsville State Bank, 231 U.S. 541 (1913); Farmers Ins. Co. v. McClain, 603 F.2d 821 (10th Cir. 1979)).  In particular it refers this court to a decision from the District Court for the Eastern District of Pennsylvania, Nationwide Mut. Ins. Co. v. Rowles.  There, the district court found that, in a case where the insurance policy at issue was only for $50,000, the insurer's obligation under the terms of the policy to pay arbitration expenses raised the amount at issue above the $50,000 statutory minimum for jurisdictional purposes. Id. at 855.

As an initial matter, we question the reasoning of the district court's decision in Rowles.  In arriving at its conclusion, the Rowles court relied upon two cases, Springsteadand McClain which held that costs and attorneys' fees should be considered part of the amount in controversy for jurisdictional purposes when they are mandated by underlying instruments or contracts.  In those two cases, however, the contracts at issue called for the payment of attorneys' fees and costs by the party breaching the contract.  Springstead, 231 U.S. at 541; McClain, 603 F.2d at 822.  Thus, the costs were essentially additional damages to be assessed against the party found to have breached the instrument, and were thus part of the controversy at issue in those cases.

However, the arbitration provision at issue in Rowles (as well as in the instant case) does not provide for additional damages to be assessed against the party who does not prevail.  Rather, it merely provides that the costs associated with arbitration will be shared evenly by the two parties.  Thus,

these costs were never in controversy, but simply were to be shared by the parties regardless of ultimate responsibility for the breach.

Furthermore, even if we considered the Rowles reasoning sound, we think that that decision is nonetheless inapposite to the case at hand. In Rowles the underlying policy mandated arbitration in the event of a dispute over coverage, providing that "[i]f [the insurer] and the insured do not agree about the insured's right to recover damages or the amount of damages, the following arbitration procedure will be used." Id. at 854 (emphasis added). Indeed, before the insurer filed the federal suit in Rowles, the insured had sought to arbitrate the dispute according to the arbitration provision. Id. The provisions governing arbitration in the insurance policy at issue in the instant case, however, are not mandatory and do not specifically impose a duty to pay on the part of State Farm. Rather, the policy provides that if State Farm and the insured do not agree on coverage, coverage "shall be decided by arbitration at the request of the insured or us." App. at 33 (emphasis added). Only if arbitration is requested will the parties then bear the extra cost of paying for the arbitration.

Here, State Farm did not plead in its complaint that it intended to pursue arbitration and would thus incur the alleged costs. See Dept. of Recreation and Sports v. World Boxing Ass'n., 942 F.2d 84, 89 (1st Cir. 1991) (explaining that a plaintiff must plead in his complaint that he has or will incur attorneys' fees as provided by statute or contract in order for such costs to be considered part of the amount in controversy for jurisdictional purposes). Rather, that State Farm elected to bring this case to federal court, indicates that it affirmatively opted not to pursue arbitration. Indeed, if the suit were to continue in federal court, we cannot see how any arbitration costs would be incurred.

Having concluded that the cost of arbitration should not be considered part of the amount in controversy for jurisdictional purposes, it is clear that the amount in controversy at issue here is limited to $50,000.

### III.

For the foregoing reasons, we vacate the decision of the district court granting summary judgment in favor of State Farm and remand this matter to the district court for purposes of dismissing the case for lack of jurisdiction.