

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2004

# B&P Holdings I v. Grand Sasso Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2286

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"B&P Holdings I v. Grand Sasso Inc" (2004). *2004 Decisions.* Paper 315.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/315

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2286

B & P HOLDINGS I, LLC,

Appellant

v.

*GRAND SASSO, INC.; GUERINO
(WOODY) ABBONIZIO and
**ROBERT ABBONIZIO, Executor
of the Estate of Thomas Abbonizio

*Amended Per Clerk's Order dated 7/2/03
**Amended Per Clerk's Order dated 10/1/03

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 99-cv-04072)
District Judge: Honorable R. Barclay Surrick

Argued March 26, 2004

Before: AMBRO, CHERTOFF, and BECKER, Circuit Judges

(Opinion filed September 30, 2004)

Denis M. Dunn, Esq. (Argued)
Petrikin, Wellman, Damico,
Brown & Petrosa
The William Penn Building
109 Chesley Drive
Media, PA   19063

    *Attorney for Appellant*

Roman J. Koropey, Esq. (Argued)
Harvey, Pennington, Cabot,
Griffith & Renneisen
14 South Bryn Mawr Avenue
Suite 210
Bryn Mawr, PA   19010

William G. Halligan, Esq.
Andrew J. Donaghy Law Office
Front & Plum Streets
P.O. Box 1970
Media, PA   19063

    *Attorneys for Appellee*
    *Grand Sasso, Inc.*

Joseph M. Fioravanti, Esq.
217 North Monroe Street
P.O. Box 1826
Media, PA   19063

Thomas D. Schneider, Esq. (Argued)
55 Green Valley Road
Wallingford, PA   19086

    *Attorney for Appellee*s
    *Guerino and Robert Abbonizio*

---

## OPINION

---

AMBRO, Circuit Judge

B&P Holdings, I LLC (B&P) appeals the decision of the District Court, inter alia, dismissing B&P's claims for lost profits filed against Grand Sasso Inc. (Grand Sasso), Guerino (Woody) Abbonizio and Thomas Abbonizio.[1]  We affirm.

## I. Factual Background and Procedural History

Grand Sasso is a family-owned company, organized by five Abbonizio brothers in 1961.  The company's primary asset is a 5.4 acre parcel of real estate in Marple Township, Delaware County, Pennsylvania (the "Property").  The ownership interests in Grand Sasso at all times relevant to this case were: Mary T. Abbonizio, 30%; Mary D. Abbonizio, 30%; Woody Abbonizio, 30%; Rose Abbonizio, 5%; and Pierino Abbonizio, 5%.  Typical for family-owned companies, Grand Sasso did not adhere strictly to formalities.  Most relevant to this case, the demarcation between the Board of Directors and individual shareholders was blurry to non-existent.  Meetings were held in which shareholders and/or their proxies attended.[2]

---

[1] Thomas died unexpectedly on July 5, 2003.  The named party in this case is now his executor, Robert Abbonizio.  For convenience we refer throughout this opinion, however, to Thomas Abbonizio and not his executor.

[2] Mary T., Mary D. and Woody had all given proxies to one or more of their respective children to vote their shares.

In 1998, B&P was looking for property in Delaware County as a site for a major supermarket chain. A commercial real-estate broker introduced Joseph Penner of B&P[3] to Woody in August 1998. According to Penner, Woody stated that Grand Sasso had decided to sell the Property and had authorized him to negotiate the price. Shortly thereafter, Woody turned over primary negotiating responsibilities to his son Thomas, a lawyer with real estate experience. Penner and Thomas continued to negotiate through December 1998. On December 30, however, Thomas informed Penner that Grand Sasso did not intend to sell the Property. Unperturbed, Penner continued to negotiate. In early February 1999, a majority of Grand Sasso's shareholders formally voted to reject the proposed sale agreement with B&P. Penner was informed of this decision in a letter dated February 5, 1999.

B&P's initial complaint was filed in August 1999. An amended complaint was filed in July 2001. It asserted claims against Grand Sasso under Pennsylvania law for breach of an agreement to negotiate in good faith, promissory estoppel and fraudulent misrepresentation. The amended complaint also asserted a claim against Woody and Thomas Abbonizio under Pennsylvania law for negligent and intentional misrepresentation. Essentially, B&P alleged that Mary T. and Mary D. never were interested in selling the Property and that the shareholders and officers of Grand Sasso were aware of this fact. Because Mary T. and Mary D. owned 60% of the company's

---

[3] Penner is the "P" in B&P. He conducted negotiations as B&P's agent.

4

shares and were opposed to a sale, negotiations were futile. Further, B&P stated that Woody and Thomas misrepresented the authority they had from Grand Sasso and/or the extent to which Grand Sasso had agreed to specific terms or was in favor of selling the Property.

In August 2001, Grand Sasso filed a motion *in limine* to exclude evidence relating to profits allegedly lost by B&P from the development and ultimate sale of the property. This motion was granted by the District Court in an April 2002 Memorandum and Order. Because B&P's amended complaint sought lost profits only and the evidence to establish that claim was excluded, the amended complaint was dismissed without prejudice in September 2002.

Several days after this dismissal, B&P moved for permission to file a second amended complaint, requesting both lost profits and reliance damages. In March 2003, the District Court granted B&P's motion to amend and deemed the second amended complaint filed. But based on the April 2002 Memorandum and Order, the District Court dismissed all claims seeking lost profits. Having done so and concluding that the dismissed claims were the only ones over which the Court had original jurisdiction under 28 U.S.C. § 1332, the remaining claims for reliance damages were dismissed without prejudice, as the $75,000 amount in controversy requirement in § 1332 was no longer met.

B&P appealed. In the appeal are "all prior non-final rulings and Orders against"

5

B&P, including the April 2002 Memorandum and Order precluding the introduction of evidence of lost profits and dismissing those claims.

## II. Jurisdiction

As the second amended complaint sought both lost profits and reliance damages, and because the $75,000 threshold for original jurisdiction under § 1332(a) was not met absent B&P's lost profits claims, the District Court dismissed without prejudice B&P's claims for reliance damages. In the peculiar posture of this case, a plausible argument exists that subject matter jurisdiction was, and is, lacking as to all of B&P's second amended complaint. This argument proceeds as follows.

Diversity jurisdiction is determined at the time the complaint is filed from the face of the complaint. 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3702, at 62-68 (3d ed. 1998); Moore's Federal Practice § 102.104[1], at 102-167 (3d ed. 2004). See also Meritcare Inc. v. St. Paul Mercy Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999); State Farm Mutual Automobile Ins. Co v. Powell, 87 F. 3d 93, 96-97 (3d Cir. 1996). Events subsequent to the filing of the complaint, or its removal to federal court if filed in state court, "that reduce the amount in controversy below the statutory minimum do not require dismissal." Id. at 97. However, a "'distinction must be made . . . between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action.'" Id. (quoting Jones v. Knox

6

Exploration Corp., 2 F.3d 181, 183 (6th Cir. 1993)) (first emphasis added, second alteration in original). Subsequent revelations that the jurisdictional minimum amount in controversy was never met require a dismissal for lack of jurisdiction. Cf. id. (explaining that "where 'the "proofs" adduced at trial conclusively show that the plaintiff never had a claim even arguably within the [required] range,' a diversity action must be dismissed" (quoting Jimenez Puig v. Avis Rent-A-Car Sys., 574 F.2d 37, 39 (1st Cir. 1978))).

Applying these principles to this case, one might argue that, excluding B&P's claims for lost profits already determined deficient prior to the filing of the second amended complaint, the later complaint failed to allege an amount in controversy in satisfaction of 28 U.S.C. § 1332(a)'s jurisdictional minimum. Normally a judgment dismissing one claim, and leaving only another claim by itself below the jurisdictional minimum amount in controversy, does not affect subject matter jurisdiction, as it is pegged at the time the complaint was filed. Lindsey v. M.A. Zeccola & Sons, Inc., 26 F.3d 1236, 1244 n.10 (3d Cir. 1994); Nationwide Mut. Fire Ins. Co. v. T & D Cottage Auto Parts & Serv., Inc., 705 F.2d 685, 687 (3d Cir. 1983). But assume a complaint alleging x claim for a correct jurisdictional amount is dismissed. Upon learning this, the plaintiff seeks permission to file an amended complaint for x and y claims knowing that x claim is now deficient on its face. Is the complaint to be referenced for jurisdictional amount the already dismissed complaint or the amended complaint? Perhaps the answer is that it makes no difference to which complaint you refer, as the District Court here

7

allowed the (second) amended complaint to be filed. Perhaps an analysis of this jurisdictional issue would turn on whether the District Court's March 2003 Order is properly perceived as an event that reduced the amount in controversy below the statutory minimum or (because of the April 2002 Memorandum and Order) as a revelation that the required amount was not in controversy at the time of filing the second amended complaint. If the latter (which may well be the case), subject matter jurisdiction was, and is, lacking.

While it is typically <u>de rigueur</u> for a court to address jurisdictional issues at the outset, we decline to unravel this procedural thicket, as B&P in any event loses on the merits of its lost profits claims. Thus we proceed to the merits under the assumption that subject matter jurisdiction exists.

### III. Analysis of Lost Profits Claims

B&P seeks a ruling that it may recover (and, hence, may introduce evidence of) lost profits from developing and selling the Property, an amount estimated at $2 million. Specifically, we must decide under the facts of this case whether Pennsylvania law allows the recovery of lost profits in a cause of action for breach of the implied duty to negotiate in good faith, promissory estoppel or fraud.[4]

---

[4]The District Court correctly concluded that Pennsylvania law applies to this case. <u>Borse v. Piece Goods Shop, Inc.</u>, 963 F.2d 611, 613 (3d Cir. 1992) (noting that federal courts sitting in diversity must apply the substantive law of the forum state). We exercise plenary review over the District Court's interpretation of state law. <u>Pittston Co. Ultramar Am. v. Allianz Ins. Co.</u>, 124 F.3d 508, 515-16 (3d Cir. 1997).

8

B&P's first argument is that the District Court erroneously raised the issue of lost profits *sua sponte* because Grand Sasso never made this argument. We disagree. Grand Sasso's Memorandum in Support of its motion *in limine* primarily argues that B&P's claims for lost profits were unduly speculative. Thus lost profits as an issue was before the District Court.

Even assuming Grand Sasso never raised the issue, the District Court could have considered (or we can now consider) it *sua sponte*. If lost profits are unrecoverable as a matter of law, and if this question affects subject matter jurisdiction due to the amount in controversy requirement, the Court had the authority to consider the issue. See Kontrick v. Ryan, 124 S.Ct. 906, 915 (2004) (holding that subject matter jurisdiction may be raised initially by either party, or *sua sponte* by the court, at any stage of litigation, including appeal) (citations omitted)); Fed. R. Civ. P. 12(h)(3) (noting that a court shall dismiss an action "[w]henever it appears by suggestion of the parties or otherwise" that subject matter jurisdiction is lacking).

With regard to lost profits for the breach of an obligation to negotiate in good faith, the District Court assumed that lost profits theoretically were recoverable.[5] According to

---

[5] The District Court's conclusion was based largely on the Seventh Circuit's decision in Venture Assocs. Corp. v. Zenith Data Sys. Corp., 96 F.3d 275 (7th Cir. 1996). In that case, Judge Posner writes:

Damages for breach of an agreement to negotiate may be, although they are unlikely to be, the same as the damages for breach of the final contract that the parties would have signed had it not been for the defendant's bad faith.

9

the Court, however, Grand Sasso's failure to negotiate in good faith was not the proximate cause of the failure to sell the Property. On appeal, B&P attacks this ruling.

Even assuming (as the District Court did) that lost profits theoretically are recoverable, we find B&P's argument unpersuasive. In most cases, the purpose of a cause of action for breach of an agreement to negotiate in good faith is to compensate a party for expenditures made in continuing futile negotiations. B&P's cause of action is premised on the assumption that no agreement was intended to be reached by Grand Sasso. See Appellant's Br. at 39 (stating that the agreement to negotiate in good faith was "breached by not having the intent to sell at all"). B&P simultaneously suggests that "[c]ompliance with the agreement to negotiate in good faith would have led to the sale of the property." Id. Yet this statement is untrue. An agreement to negotiate in good faith does not guarantee the ultimate execution of a final contract. There is nothing to indicate that, had the parties negotiated in good faith, a final agreement necessarily would have been

> If, quite apart from any bad faith, the negotiations would have broken down, the party led on by the other party's bad faith to persist in futile negotiations can recover only his reliance damages — the expenses he incurred by being misled, in violation of the parties' agreement to negotiate in good faith, into continuing to negotiate futilely. But if plaintiff can prove that had it not been for the defendant's bad faith the parties would have made a final contract, then the loss of the benefit of the contract is a consequence of the defendant's bad faith, and, provided that it is a foreseeable consequence, the defendant is liable for that loss — liable, that is, for the plaintiff's consequential damages.

Id. at 278 (citation omitted).

10

reached. Further, the number of approvals (zoning, planning, environmental, *etc.*) that would have been required, even if a final agreement had been reached, is daunting.

B&P's claim for lost profits in its promissory estoppel claim must also fail. B&P states that the "real question under the promissory estoppel issue is the same question to be answered under the breach of the agreement to negotiate in good faith. Grand Sasso promised to negotiate in good faith, B&P relied on that promise and committed its time, its effort and its resources to this project and this property. Grand Sasso breached that promise."[6] Id. at 46. B&P continues that if "Grand Sasso had honored [its] promise, B&P would have purchased the Property and made the profits that it is now claiming as lost profits." Id. For the reasons previously stated in assessing the viability of a lost profits claim in the context of a breach of the implied covenant to negotiate in good faith, lost profits are not recoverable under a promissory estoppel theory.

In addition, B&P may not recover lost profits under its fraud claims. "Under Pennsylvania law, in an action based on fraud, the measure of damages is 'actual loss' and not the benefit, or value, of that bargain." Delahanty v. First Pa. Bank, 464 A.2d 1243, 1257 (Pa. Super. Ct. 1983) (internal citation and citation omitted); see also Peters v. Stroudsburg Trust Co., 35 A.2d 341, 343 (Pa. 1944) ("There are a few jurisdictions in

_____

[6] The facts indicate that consideration (required to enforce an agreement to negotiate in good faith) may have been lacking. As B&P concedes, promissory estoppel is "simply a different way of finding the consideration necessary to support the agreement to negotiate in good faith." Appellant's Br. at 44.

11

which, in cases of deceit and fraud, plaintiff is allowed the value of his bargain. But such is not the rule in Pennsylvania. Here he can recover only his actual loss."); GMH Assocs. v. Prudential Realty Group, 752 A.2d 889, 905 (Pa. Super. Ct. 2000) (stating in a *dictum* that the "only manner of damages available for a successful plaintiff in an action for fraud is actual loss, and not benefit of the bargain" (citing Delahanty, 464 A.2d at 1257)). B&P seeks to recover the profits it would have received had Grand Sasso's (and Woody's and Thomas's) purported misrepresentations been true. In other words, B&P seeks the benefit of a bargain that never materialized — anticipated profits flowing from purchase of the Property. This type of recovery is prohibited in Pennsylvania.

Accordingly, we disagree with B&P's contention that case law supports its position that benefit of the bargain damages are recoverable under a fraud claim. In Jahanshahi v. Centura Development Co., 816 A.2d 1179 (Pa. Super. Ct. 2003), the discussion of lost profits was in the context of breach of contract, not fraud. The opinion, in a *dictum*, refers to "[d]amages for lost profits, like other contract damages," id. at 1184 (citation and quotations omitted), and states that plaintiffs "sought to offer an opinion about the profits lost when [defendant] cancelled the lease agreement." Id. at 1185. The Court also engaged in a lengthy statute of frauds analysis, an analysis that would be unnecessary if it were a fraud case. Id. at 1189-90. In short, Jahanashahi in no way indicates an intention to deviate from the Delahanty rule that benefit of the bargain damages are not recoverable in a fraud case. Any other interpretation would run counter to the controlling

12

Pennsylvania Supreme Court precedent in <u>Peters</u> that predates <u>Delahanty</u> by nearly 40 years.

Similarly, <u>Tunis Brothers Company v. Ford Motor Company</u>, 952 F.2d 715 (3d Cir. 1992), discusses and explicitly approves of the actual loss standard. "In addressing the compensatory damages issue, the court in <u>Delahanty</u> observed that '[u]nder Pennsylvania law, in an action based on fraud, the measure of damages is "actual loss," . . . and not the benefit, or value, of that bargain.'" <u>Id.</u> at 735 (citations and quotations omitted). Therefore, to interpret <u>Tunis Brothers</u> as supporting benefit of the bargain damages in a fraud case is to conclude that the case misapplied the very legal standard it espoused. This <u>Tunis Brothers</u> obviously did not do.

\* \* \* \* \*

In this context, we affirm the District Court's decision dismissing B&P's claims for lost profits.[7]

---

[7] Despite failing to file a notice of appeal, Woody and Thomas Abbonizio filed a separate brief, arguing entitlement to judgment on alternative grounds. Because we conclude that B&P is not entitled to lost profits, we need not reach the merits of the Abbonizios' arguments or the question of whether we have jurisdiction to consider them.